# Exhibit C

Parking Systems, Inc.
Case 29-CA-331253

## Confidential Witness Affidavit

**I, Ayse Porsuk, under the penalty of perjury, state as follows:**

**I have been given assurances by an agent of the National Labor Relations Board (NLRB) that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the NLRB and will not be disclosed unless it becomes necessary to produce this Confidential Witness Affidavit in connection with a formal proceeding.**

My office address is 311 Crossway Park Drive, Woodbury, NY 11797

My office phone number (including area code) is (516) 683-1102

My cell phone number (including area code) is (516) 815-1596

My e-mail address is ayse@local1102.org.

I am employed by Local 1102, RWDSU, UFCW ("Union"),

located at 311 Crossway Park Drive, Woodbury, NY.

1. I have been employed as a business agent for the Union for approximately the past 7 years. My job duties as business agent include visiting with workers whom the Union represents, addressing any workplace issues our members might have, arrange and conduct labor-management meetings with employers with whom the Union has bargaining relationships, negotiating collective-bargaining contracts, and otherwise trying to assist the workers we represent. I have been involved with representing employees who work as parking attendants at Stonybrook University Hospital ("Hospital" or "Stonybrook") for about 7 years, basically throughout my time working as a Union business agent.

**Privacy Act Statement**
The NLRB is asking you for the information on this form on the authority of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the NLRB in processing representation and/or unfair labor practice cases and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). Additional information about these uses is available at the NLRB website, www.nlrb.gov. Providing this information to the NLRB is voluntary. However, if you do not provide the information, the NLRB may refuse to continue processing an unfair labor practice or representation case, or may issue you a subpoena and seek enforcement of the subpoena in federal court.

- 1 -                                                              Initials _A.P_

2. Until December 1, 2023, Stonybrook parking employees had been employed by a company called Classic Valet Parking ("Classic"). The Union had a productive bargaining relationship with Classic, and since the Union was certified as the bargaining representative of employees at the Hospital, the Union and Employer had entered multiple collective-bargaining agreements covering Stonybrook parking employees' terms and conditions of employment. I believe that there were at least two different contracts in effect during my time as business agent representing workers in this unit.

3. In late 2023, Classic's contract with the Hospital expired, and the Hospital did not renew it. Instead, the Hospital opted to contract with another parking services provider called Parking Systems, Inc. ("Employer"). I personally did not reach out to Parking Systems officials regarding the Union status as the bargaining representative of the employees in the operation the Employer was inheriting from Classic. I understand that the Union's attorney Matthew Rocco handled those communications with the Employer.

4. As of November 30, 2023, 35 bargaining unit employees worked for Classic at Stonybrook. The Employer did not hire any of the former Classic employees after the Employer took over the operation on December 1. I understand from speaking with members that almost all, if not all of the Classic employees at Stonybrook applied for a position with Parking Systems, but none of them received a job offer. I believe that only one employee – Franis Gil – was called by the Employer for an interview in response to a job application. I recall that the interview Francis had was on Saturday, November 25. Francis texted me and told me that she was invited to meet with Employer representatives at the Jake's 58 Casino in Long Island on November 25 at 1 p.m. I know that Francis was nervous about meeting with the Employer representatives, and she told me she would bring her son Edward with her to the meeting. At about 2 or 2:30 p.m. on

- 2 -                                   Initials: _A.P_

November 25, I received a call from Francis. I did not pick up her initial called, but I called her back right away after I saw a missed call from her. When I called Francis back, she picked up, and she told me that she had just finished her meeting with the Employer's representatives. We discussed what had occurred during the meeting, and Francis said that the Employer agents she met with had offered her a job with the company at Stonybrook, but they told her that there would be no Union at the job if/when she started with the Employer and that the Employer does not work with unions. Francis told me she declined the offer. I responded that I would let the Union attorneys know about this.

5. The former Classic employees who were denied continued employment at Stonybrook because of the Employer's anti-union policies have mostly moved on to other jobs. I am part of a text message chat group in which about 22 former Classic employees at Stonybrook are included. I have read in this chat group some messages from employees who stated that they could not wait for the Union to resolve the dispute with Parking Systems to get them back their jobs at Stonybrook. These workers said that they are seeking new employment. I would often call these members and speak with them about their situations, and they would confirm to me that they needed income to support themselves and their families and were going to start working new jobs. I have seen text messages and/or spoken with all 22 members in the chat group, and each of them confirmed to me that they have secured new employment. I have spoken with 3 other workers who are not part of the chat group, and they too told me that they have moved on to new jobs. Based on my conversations with these workers, it seems that those who have found new jobs would likely accept an offer to return to work for the Employer at Stonybrook, but only if such an offer came reasonably quickly – for example within the next month or so. Many of these workers had worked at the Hospital for many years, had become accustomed to the job and

enjoyed working with Hospital patients and visitors. However, I believe that if these employees do not receive an offer to return to work at Stonybrook until several years from now, then most – if not all – of them are probably not going to return. After all that time, the workers' connection with the Stonybrook job will have faded, and they are likely to have grown accustomed to their replacement jobs and would be reluctant to leave those jobs.

6. The Union had two employees who assisted with contract negotiations with Classic – Ramon Perez and Edwin Arias. We had relied on these employees to assist the Union in bargaining so that we could better understand employees' needs and their workplace demands and effectively advocate for those demands at the bargaining table. We also relied on Ramon and Edwin to communicate with unit employees about what the Union was seeking in negotiations and to help us organize the workers in support of our bargaining positions. Both Ramon and Edwin have obtained replacement employment. The Union had various other strong supporters who actively engaged with the Union and were eager to help support the Union's positions. All of them have now also moved on to new jobs.

7. I have spoken to many former Classic employees who have become disillusioned with the Union because of Parking Systems' discriminatory failure to hire them and the Employer's refusal to recognize the Union. I have seen numerous messages in the group chat from employees who have expressed frustration with the fact that the Union was not able to provide them job security. Several employees have commented, in sum and substance, that they have no faith in the Union anymore because the Union could not keep them employed. I have seen messages from workers saying that the Union is powerless to do anything for them because they remain out of work. In most instances when I have seen comments like this on the group chat, I would reach out to the person making the comments directly. The workers I reached out

- 4 -     Initials: A.P

Case 29-CA-331253

to told me that while they still had sympathy for the Union, they believed that they needed to move on from actively supporting the Union because the Union was not able to get them their jobs back anytime soon. I would tell each of these frustrated workers that the Union was actively pursuing legal cases with the NLRB to get them their jobs back, but that the process takes time. The workers would respond by asking how long it would take to get back to work, and I would tell them that I could not say for sure. To that, the workers I spoke with would say that they needed to support themselves and their families and could not wait for the Union to work out the legal case. They expressed how upset they were that they were out of work only because they had a union. All I could say in response was that the Union was doing all we could do to help them. I recall having conversations like this was many employees, including Migeul Perez, Lola Perez, Jose Peralta, Issac Thomas, Jose Perez, Juan Fernandez, Virgilo Perez, and Ramon Peralta. I believe all these workers have moved on to new jobs.

8. In December 2023, the Union held two rallies in support of the former Classic workers and in protest of the Employer's unfair labor practices at a designated public gathering space located on the Hospital's campus. Each of these rallies was attended by 33 former Classic workers. I understand that 2 of the unit employees were out of the country at the time and could not attend. The first rally was in early December, and the second was in mid-December. After the second rally, however, the workers started getting replacement jobs, which kept them busy throughout the day most days and would prevent them from attending a daytime rally organized by the Union. I have not attempted to organize another rally at the Hospital because I know that most of the workers will not be able to attend, given that they all have new jobs. I am certain that I would not be able to get nearly as many workers to join a rally at this point as had joined our rallies in December.

Initials: A.P.

Case 29-CA-331253

///

I understand that this affidavit is a confidential law enforcement record and should not be shown to any person other than my attorney or other person representing me in this proceeding.

This Confidential Witness Affidavit consisting of six (6) pages, including this page, has been read to me in Spanish. I fully understand the Affidavit and I state under penalty of perjury that it is true and correct.

Date: 2/20/2024   Signature: *Ayse Porsuk*
Ayse Porsuk

This affidavit was taken by:

*Matthew Jackson*
Matthew A. Jackson
Board Agent, National Labor Relations Board

- 6 -   Initials: A.P